**WATERMAN STEAMSHIP CORPORATION
v. NATIONAL LABOR RELATIONS
BOARD et al.**

**No. 8841.**

Circuit Court of Appeals, Fifth Circuit.

April 11, 1939.

Gessner T. McCorvey and C. A. L. Johnstone, Jr., both of Mobile, Ala., for petitioner.

Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, National Labor Relations Board and A. Norman Somers, Atty., National Labor Relations Board, all of Washington, D. C., for respondents.

Charles for American Federation of Labor, amicus curiæ.

William L. Standard, of New York City, for intervenor, National Maritime Union of America.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Waterman Steamship Corporation owns and operates a fleet of vessels and is engaged in interstate and foreign commerce. It is an Alabama corporation with headquarters in Mobile.

The Waterman Corporation was under contract and employed the unlicensed personnel of its crews from the membership of the International Seamen's Union of America, an affiliate of the American Federation of Labor. Section 1 of the contract provided, "It is understood and agreed that as vacancies occur, members of the International Seamen's Union of America, who are citizens of the United States, shall be given preference of employment, if they can satisfactorily qualify to fill the respective positions; provided, however, that this Section shall not be construed to require the discharge of any employee who may not desire to join the Union, or to apply to prompt reshipment, or absence due to illness or accident".

Two of the vessels of the Waterman Steamship Corporation, the S. S. Fairland and the S. S. Bienville, were returning to Mobile from voyage. On July 1, 1937, they arrived at Tampa, Florida, and the majority of the members of the crews of these two vessels, under the guidance of an organizer, changed their membership from the International Seamen's Union of America to the National Maritime Union of America, an affiliate of the Committee for Industrial Organization.

The ships proceeded from Tampa to Mobile. When the Bienville reached Mobile it was laid up for extensive repairs; its crew was discharged, and the members paid and signed off before the United States Shipping Commissioner. When the Fairland reached Mobile it went immediately on dry dock and the crew was likewise paid, discharged and signed off. The Bienville was laid up for repairs from July 5th to August 1st. The Fairland was in dry dock for thirty hours and for seven days was laid up for repairs.

When these ships were ready to sail again and crews were to be signed on, the Waterman Steamship Corporation, under its existing contract with the International Seamen's Union of America, employed only members of that union. The members of the old crews, being members of the National Maritime Union of America, were not reemployed.

A complaint alleging unfair labor practices was filed against the Waterman Steamship Corporation and after a long and exhaustive hearing, the National Labor Relations Board found that the corporation had laid off and refused to reinstate forty-three members of the crews of the S. S. Fairland and S. S. Bienville for the reason that the said employees had joined and assisted the National Maritime Union of America, an affiliate of the Committee for Industrial Organization; that C. J. O'Connor, second assistant engineer on the S. S. Azalea City, had been discharged and refused reinstatement because of his participation in a collective protest and for holding membership in the Marine Engineers' Beneficial Association, also an affiliate of the Committee for Industrial Organization; and that the Waterman Steamship Corporation in denying passes to delegates of the National Maritime Union of America to go upon the ships of the company to solicit members had discriminated against this union and in favor of the International Seamen's Union of America.

The Board thereupon entered its order on May 18, 1938, commanding the company to cease and desist and post notices, and to offer reinstatement to the employees who had been discharged and that without prejudice to seniority and with back pay and reasonable value of maintenance on shipboard for the time they had been laid

off. The company was further ordered to grant passes to the representatives of the National Maritime Union of America in equal numbers and under the same conditions as it issued passes to the International Seamen's Union of America. .

The Waterman Steamship Corporation brings this appeal and seeks to vacate the order of the National Labor Relations Board entered on May 18, 1938. In this proceeding National Maritime Union of America has intervened on behalf of the Board, and Seamen's Reorganization Committee, successor to the International Seamen's Union of America, has intervened on behalf· of the Waterman Steamship Corporation.

■ A careful reading of the evidence discloses that the Waterman Steamship Corporation has been dealing fairly with the labor unions. Where a majority of its employees in a particular class were members of a union it contracted to employ men who belonged to that union regardless of the union's affiliation. It has not organized a company union, sponsored ,any certain union, or discharged its employees for union activity or affiliation. It entered into contract and gave preference of employment to members of the International Seamen's Union of America for the reason that its members were in the majority. We have heretofore held such employment contracts to be valid. Peninsular & Occidental S. S. Co. v. National Labor Relations Board, 5 Cir., 98 F.2d 411.

The evidence is virtually without dispute that repairs on the S. S. Bienville and S. S. Fairland had been planned by the company long before the crews changed their membership from one union to another. When the ships were laid up for repairs it was only for reasons of economy, we think, that the crews were discharged. There was no effort on the part of the company to make war on the unions. The evidence does not even point in that direction. Some of the members of the crews were employed in the shops while the ships were laid up. The Waterman Corporation's engineers were members of the Marine Engineers Beneficial Association, an affiliate of the Committee for Industrial Organization, and they were members and so belonged before these vessels went to sea. No effort was made to discharge them,. and we may conclude that all of them, except O'Connor of the S. S. Azalea City, are yet working for the company.

The finding of the Board that the ships were laid up as an excuse to get rid of the men is based on suspicion and not on the evidence.

■ When the time came to employ crews for the Bienville and Fairland after they had been repaired, the company was bound under its contract to select its unlicensed employees from the membership of the International Seamen's Union of America. The Board by its order would penalize the company for keeping this contract.

■ The Waterman Corporation admits that it refused to issue passes to representatives of either of the unions to come aboard its vessels to organize and recruit members. The attitude of the company is clearly shown by an order addressed to the Masters of all the vessels. It bore date of July 13, 1937: "To All Masters:—In view of the ·fact that the National Labor Relations Board are now holding elections to determine whether the N. M. U. or the I. S. U. should represent the unlicensed members of our crews in collective bargaining, we have decided that we will not allow any delegates from either union to board our vessels for the purpose of soliciting memberships. N. Nicholson, Executive Vice-President."

Under the provisions of the contract representatives of the International Seamen's Union of America were granted passes to go aboard the vessels to collect dues from its members. The National Maritime Union of America had no such contract. Both unions were alike denied passes to solicit members.

The trouble was not of the making of the Waterman Steamship Corporation. It emanated from a fight between the unions and nothing more. As they fought to oust each· other the Waterman Steamship Corporation became the victim. One may conclude from the evidence that if the union representatives were permitted to go aboard the ships to organize and recruit members, business and shipping in all probability would be shunted aside while the· rival unions staged a battle for supremacy. The company was within its right when it forbade the representatives of the unions to come aboard its vessels for the purpose of soliciting memberships. It played no favorite and the Board erred in its order in this respect. In re American France Line et al., and International Seamen's Union of America, Vol. 3, Decisions and

Orders of the National Labor Relations Board, 64, 78, 79.

The National Labor Relations Board has wide discretion in administering the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., but in so doing it must deal fairly with all the parties. It has the duty to decide the case before it on all the evidence and should not arbitrarily cast away all the undisputed evidence that is inconsistent with its findings. If its findings are supported by substantial evidence they should stand. The test of substantial evidence, however, is not satisfied by evidence which merely creates a suspicion. Appalachian Electric P. Co. v. National Labor Relations Board, 4 Cir., 93 F.2d 985; Peninsular & Occidental S. S. Co. v. National Labor Relations Board, 5 Cir., 98 F.2d 411.

The special finding of the Board as to Edmund J. Pelletier, Steward of the Bienville, is not supported by the evidence. It is without dispute that the Captain of the Bienville had written from a foreign port to the Port Captain at Mobile complaining of the way in which Pelletier was running his department aboard ship. The company had the right to discharge him for cause. All employers have wide latitude in employing and discharging employees. The only requirement of the National Labor Relations Act is that the employee must not be discharged on account of union activities and union affiliations. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Associated Press v. National Labor Relations Board, 301 U.S. 103, 132, 57 S.Ct. 650, 81 L.Ed. 953; National Labor Relations Board v. Union Pacific Stages, 9 Cir., 99 F.2d 153.

The evidence shows that there is no merit in the Board's finding that C. J. O'Connor, second assistant engineer on the S. S. Azalea City, was discharged for his participation in a collective protest and for holding membership in the Marine Engineers' Beneficial Association. O'Connor was not discharged. The Port Captain did not discharge him but directed him to take a vacation when he arrived in Mobile. This he did. The evidence tends to show that O'Connor was in the habit of taking voluntary vacations at frequent intervals. He has never returned and formally made request to be placed on active duty. He is entitled to pay for the number of days the company allows and grants for vacation to its employees in his class. Upon application he is also entitled, if he can satisfactorily qualify, to be offered reinstatement to his former position.

It results that the petition of the Waterman Steamship Corporation is granted and the order of the National Labor Relations Board is vacated except as modified and approved as to C. J. O'Connor. Judgment will be entered accordingly.

Reversed.